UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
WHITE PLAINS DIVISION
- - - - - - - - - - - - - - - - - - - - X

eScholar, a New York                    :
Limited Liability Company,

       Plaintiff                        :

v.                                      :

Miami University of Ohio

       Defendant                        :

- - - - - - - - - - - - - - - - - - - - X

Civ.

2012 DEC 12  PH 12: 52

**COMPLAINT**

12 CV 9039

Jury Trial Demanded

JUDGE BRICCETTI

Plaintiff, eScholar LLC., ("Plaintiff" or "eScholar") for its complaint against Defendant Miami University of Ohio ("Defendant" or "University"), by and through its undersigned counsel, states and alleges as follows:

### Introduction

1.    This is a case of trademark infringement initiated by a nationally recognized education data management Company against Defendant for willful and unauthorized use and infringement on its "eScholar®", and eScholar Uniq-ID®" protected trademarks. eScholar®'s award winning products have become the recognized standard in student and staff identification, education data warehousing, and personalized goal management solutions in the education marketplace. As alleged herein, the Plaintiff's suite of educational data management products is currently relied upon by 13 state education agencies across the United States (significantly, in influential states such as New York and Texas for example), school districts, the U.S. Department of Education, and the U.S. Department of Defense Education Activity (DoDEA). The records of nearly 20 million of the nation's K-12 and Postsecondary students are managed through eScholar products and services.

## Jurisdiction and Venue

2.      This is a Complaint for violations of §§ 32 and 43 of the Lanham Act, 15 U.S.C. §

1114 (1) (Trademark Infringement), 15 U.S.C. § 1125(a) (False Designation of Origin,

Unfair Competition) and for deceptive trade practices under N.Y. Gen. Bus. Law § 349.

3.      The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §

1331 and 28 U.S.C. § 1338 because this action presents questions under federal law

under the Lanham Act, 15 U.S.C.§§ 1051, *et seq.*  The Court has diversity jurisdiction

pursuant to U.S.C. § 1332. The Court has supplemental jurisdiction over Plaintiff's state

law claims pursuant to 28 U.S.C. § 1367.

4.      The Court has personal jurisdiction over Defendant because the Defendant

conducts business in New York State. Also, Defendant has purposefully availed itself of

the activities in this forum, and this Complaint arises out of those activities namely the

publication and dissemination of the infringing trademarks in New York causing ongoing

injury to Plaintiff.

5.      Venue is proper in this District pursuant to 28 U.S.C. § 1391 (c), because a

substantial part of the events giving rise to the claim occurred, and continue to occur, in

the Southern District of New York.  The damage to Plaintiff described herein takes place

in the Southern District of New York and elsewhere.

## Operative Facts

The"eScholar®", and eScholar Uniq-ID®" distinctive and fanciful trademarks at issue

6.      eScholar exclusively owns a registered trademark for  "eScholar®", described in trademark registration filing no. 3349609, filed on July 15, 2005, as "Computer software for automation of data warehousing in conjunction with unique identification systems for the education market, namely, schools, school districts, staff and students".

7.      eScholar exclusively owns a registered trademark for "eScholar Uniq-ID®" described in trademark registration filing no. 3303797, filed on October 2, 2007, as "Computer software for automation of data warehousing in conjunction with unique identification systems for the education market, namely, schools, school districts, staff and students".

8.      eScholar has used the "eScholar®" mark in commerce since at least as early as 1998 in connection with a wide variety of high-quality software products and services as described above, and such use continues today. It is beyond question that the longstanding and continuous use of the "eScholar®" mark has become exclusively associated with the Company, and its products and services, in the educational marketplace.

Plaintiff's other protected trademarks

9.      eScholar exclusively owns a registered trademark for "eScholar myTrack®"
described in trademark registration filing no. 4215239, filed on August 9, 2011, as
"computer software application which provides a workflow for setting and managing
goals, analyzing results, and accessing data for benchmarking, and allows students,
educators, administrators, and parents to build and create pathways to success for
education, personal and career goals".

10.     eScholar exclusively owns a registered trademark for "eScholar Complete Data
Warehouse®" described in trademark registration filing no. 3363282, filed on July 15,
2005, as "Computer software for automation of data warehousing in conjunction with
unique identification systems for the education market, namely, schools, school districts,
staff and students".

11.     eScholar exclusively owns a registered trademark for "eScholar RADAR®"
described in trademark registration filing no. 3485742, filed on March 22, 2007, as
"computer software that reviews data being stored in a data warehouse or other source
system, finds anomalies in the data, and reports those anomalies to the relevant agency".

12.     eScholar exclusively owns a pending application for "eScholar U" described in
service mark serial no. 85689528 filed on July 28, 2012, as "interactive online
professional development services in the field of education and data".

13.     eScholar exclusively owns a pending application for "eScholar Interstate"
described in filing serial no. 85618456 filed on May 7, 2012, as "computer software for

database management through identifying and comparing unique individuals by processing data requests from source data located in a customer database".

14.    In addition, the Company has been exclusively using the following terms protected under trademark common law for certain of its products and services:

a. "eScholar Data Manager™"
    described in proposals to prospective customers as: "a web-based interface that provides authorized Districts or State users access to validate, manage and load data as it moves through the ETL process and is loaded into the eScholar Complete Data Warehouse®"

b. "eScholar Data Integration Templates™"
    described in proposals to prospective customers as: "The description of the standard formats for data that the eScholar Complete Data Warehouse® and eScholar Uniq-ID® applications can transform, cleanse, load and process"

<u>Plaintiff is a well-recognized and market leader in education data management</u>

15.    eScholar has become the market leader in education data management.  Today the Company's award-winning products have become the recognized standard in student and staff identification, education data warehousing, and personalized goal management solutions in the education marketplace.

16.    The Company's suite of educational data management products is currently relied upon by 13 state education agencies across the United States (significantly, in influential states such as New York and Texas for example), school districts, the U.S. Department of Education, and the U.S. Department of Defense Education Activity (DoDEA).

17.     The records of nearly 20 million of the nation's K-12 and Postsecondary students are managed through eScholar products and services.

18.     To be sure, "eScholar®" is a "distinctive" and "fanciful" mark in the educational sector and is indelibly associated with the Company's award winning and well recognized products and services that are marketed and sold throughout the education marketplace in the United States. The Company name "eScholar®" is a made up term that the founder and Chief Executive Officer, Shawn Bay, originated in 1998.

19.     Further enhancing the recognition of the eScholar marks across the United States is the fact that the "eScholar Complete Data Warehouse®"solution has become the market leader and "go-to" standard software solution for integrating and managing the vast quantity of information collected on students, programs, and teachers, in K-12 and Postsecondary education.

<u>Plaintiff's promotional and advertising initiatives.</u>

20.     Over the years, eScholar has advertised and promoted itself through numerous trade publications, trade shows and speaking engagements across the country associated with its product and services offerings. For example, the founder and CEO of eScholar, Shawn Bay, was recently invited to speak at a White House event with special guests including U.S. Secretary of Education, Arne Duncan, U.S. Chief Technology Officer, Todd Park, and Assistant Deputy Secretary of Innovation and Improvement at the U.S. Department of Education, Jim Dolan, to present on the Company's new applications from education's private sector that are fueled by open data. This event, called "Education

Datapalooza" showcased the best and brightest new education applications coming out of the private sector.

21.     In addition, Mr. Bay was recently invited to speak on a panel of experts by the Data Quality Campaign, the leading national organization focused on putting data to use in improving education.  Mr. Bay shared the podium with representatives of the U.S. Department of Education and the Georgia Department of Education, among others.

22.     eScholar has been recognized in publications such as The Wall Street Journal, The New York Times, The New York Daily News, Eduventures, Scholastic Administrator, EdNet, EdTechDigest, Yahoo Finance, Education Week, SuperTECH NEWS and the Postsecondary Electronic Standards Council.

23.     For more than 12 years, eScholar has also made extensive use of the Internet to promote itself and the Company's products and services.  eScholar invests significantly in search engine optimization (SEO), in order to promote the eScholar name, and its products and services.

24.     eScholar has, for several years now, retained a public relations firm to promote the Company and its products and services.

25.     The Company was recently awarded a high profile contract with the New York State Education Department (along with other major education companies) which was featured in the *Wall Street Journal*.

26.     Since the Company commenced using the "eScholar®" mark and the "eScholar Uniq-ID®" mark in United States commerce, eScholar has expended substantial sums of money advertising and promoting the "eScholar®" mark and the "eScholar Uniq-ID®" mark, and has built "eScholar®" and "eScholar Uniq-ID®" into well-known names in the educational marketplace.

<u>Plaintiff's aggressive policing of other infringers.</u>

27.     eScholar has actively monitored and policed others' uses of the "eScholar®" mark, including issuing numerous cease and desist demands against any unauthorized users of the "eScholar®" mark. In particular, the Company has issued cease and desist demands to the following entities and institutions, (i) Montclair State University, (ii) Salva Regina University, (iii) University of New Mexico, (iv) University Wisconsin Stout, (vi) Pacific University Oregon, (vii) Purdue University, (viii) eScholar Academy, and (ix) Enterprise Computer Services.

28.     The University of New Mexico has verbally agreed to cease and desist from any further use of the Company's mark.  A written undertaking will be forthcoming.

29.     Another prominent infringer has recently agreed to cease and desist from using the "eScholar®" mark; however the agreement is subject to strict confidentiality provisions which prevent eScholar from disclosing the name of the infringer.

30.     As a result of entering into the cease and desist settlement with the unnamed infringer, numerous customers of its product, mainly universities, have made substantial changes to their respective websites to address the Company's concerns, and further, will

be making additional changes in the near term which are expected to completely address the Company's infringement concerns.

31.     Additionally, eScholar Academy recently agreed to phase out the use of Plaintiff's "eScholar®" mark given Plaintiff's demand that the academy's continued use of its mark constitutes infringement.

<u>Defendants Trademark Infringement Acts</u>

32.     In September 2012, the Company learned that Defendant is using the mark "eScholar®" on its website (<u>www.lib.muohio.com</u>) in connection with an online tutorial to promote principles of educational academic integrity. Incredibly, the University uses the identical stylistic elements that are incorporated in Plaintiff's mark.  The Plaintiff never authorized the use of its "eScholar®" mark by the University.

33.     The Company also learned at that time that Miami University Ohio, as with the "eScholar®," mark utilizes the same stylistic elements for "Unique-ID" as incorporated in Plaintiff's mark, "eScholar Uniq-ID®", namely, a capital "U" and the capital "ID" thus making the marks identical in virtually all respects. The University uses the marks "eScholar®" and "Unique-ID" in close proximity. Again, Plaintiff never authorized such use of its marks.

34.     Significantly, the "eScholar myTrack®" product offering is marketed and sold for use by students, parents and teachers, as well as administrators from Pre-Kindergarten through Postsecondary, which, of course, would include the student population at Miami University of Ohio.

35.     Despite the Plaintiff's issuance of two cease and desist demands Defendant has categorically refused to cease from further use of Plaintiff's protected trademarks.

## COUNT I

## TRADEMARK INFRINGEMENT UNDER LANHAM ACT 15 U.S.C.§ 1114

36.     Plaintiff repeats and realleges paragraphs 1 through 36 of this Complaint as if fully set forth herein.

37.     Defendant's unauthorized use of the "eScholar®" and "eScholar Uniq-ID®" to promote, market, or sell its products and services constitutes trademark infringement pursuant to 15 U.S.C.§ 1114. Defendant's intentional and willful infringement of the "eScholar®" and "eScholar Uniq-ID®" registered trademarks has caused and will continue to cause damage to Plaintiff, and is causing irreparable harm to Plaintiff for which there is no adequate remedy at law.  Defendant is directly liable for these actions.

## COUNT II

## FALSE DESIGNATION OF ORIGIN UNDER THE LANHAM ACT 15 U.S.C. § 1125(A)

38.     Plaintiff repeats and realleges paragraphs 1 through 38 of this Complaint as if fully set forth herein.

39.     Defendant has and continues to use the "eScholar®" and "eScholar Uniq-ID®" registered marks in connection with its goods or services, in commerce, in a manner that

is likely to cause confusion, mistake, or deception as to the origin, sponsorship, or approval of Defendant's products and services. Defendant is directly liable for these actions. Plaintiff has been damaged by these acts in an amount to be proved at trial. Plaintiff is also entitled under the Lanham Act to injunctive and equitable relief against Defendant.

## COUNT III

## UNFAIR COMPETITION UNDER THE LANHAM ACT 15 U.S.C. § 1125(A)

40.     Plaintiff repeats and realleges paragraphs 1 through 40 of this Complaint as if fully set forth herein.

41.     Defendant's use of the "eScholar®" and "eScholar Uniq-ID®" registered marks in connection with its goods or services, in commerce, constitutes Unfair Competition pursuant to 15 U.S.C. § 1125(A). Defendant's use of the "eScholar®" and "eScholar Uniq-ID®" registered marks is likely to cause confusion, mistake, or deception among Plaintiff's customers. Defendant is directly liable for these actions. Plaintiff has been damaged by these acts in an amount to be proved at trial. Plaintiff is also entitled under the Lanham Act to injunctive and equitable relief against Defendant.

11

## COUNT IV

## UNFAIR BUSSINESS PRACTICE UNDER N.Y. GEN. BUS. LAW § 349

42.     Plaintiff repeats and realleges paragraphs 1 through 42 of this Complaint as if fully set forth herein.

43.     Defendant's use of the "eScholar®" and "eScholar Uniq-ID®" registered marks to promote, market, or sell its products and services constitutes a deceptive act or practice in the conduct of Defendant's business, trade or commerce, and in the furnishing of services to customers and therefore a violation of N.Y. Gen. Bus. Law. § 349 *et seq*.

44.     Defendant's materially misleading practice of using the identical registered marks of Plaintiff are likely to cause customers of Plaintiff to be misled as to the true source, sponsorship, or affiliation of Plaintiff's products and services.

WHEREFORE, Plaintiff respectfully prays that this Court:

1.  Issue of a preliminary injunction, pending disposition of this dispute, enjoining and prohibiting Defendant, or its agents, servants, employees, officers, attorneys, successors and assigns from:

    (a)     Using "eScholar®" and "eScholar Uniq-ID®" registered trademarks, or any version thereof, in connection with the description, marketing, promotion, advertising, or sale of any of its products or services.

    (b)     infringing "eScholar®" and "eScholar Uniq-ID®" registered trademarks;

2.  Ordering award of damages in an amount to be determined at trial;

3.  Order an award of treble damages as provided by Section 35(a) of the Lanham Act and New York law; and

4.  Order an award of attorney's fees and costs as provided by Section 35(a) of the Lanham Act and New York Law, and

5.  Order an award of punitive damages in an amount to be determined at trial; and

6.  Grant such other further relief as the Court deems appropriate.

Dated: December 12, 2012

Respectfully submitted,

McMENAMIN LAW GROUP

By: _Paul R. McMenamin_

Paul R. McMenamin, Esq.
Attorney for Plaintiff
New York Bar No. 2527604
MCMENAMIN LAW GROUP
555 Fifth Avenue, 11th Floor
New York, NY 10017
Direct Dial: (646) 670-7370
Cell: (917)-312-8334
Email:paul@mcmenaminlawgroup.com